# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| **JOSEPH MARTINEZ** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | |
| } | Case No.: 6:19-CV-00081-RDP |
| **ANDREW SAUL, SOCIAL** } | |
| **SECURITY ADMINISTRATION,** } | |
| **COMMISSIONER,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

Plaintiff Joseph Martinez ("Plaintiff") brings this action pursuant to Section 1614(a)(3)(A) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security (the "Commissioner") denying his claim for supplemental security income ("SSI"). *See* 42 U.S.C. § 1382(c). Based on the court's review of the record and the parties' briefs, the court finds that the decision of the Commissioner is due to be affirmed.

**I. Proceedings Below**

Plaintiff filed his application for supplemental social security income on December 4, 2013,[1] alleging that his disability began on July 11, 1993. (Tr. 138, 271-79). On March 6, 2014, the Social Security Administration ("SSA") denied Plaintiff's application. (Tr. 134). Plaintiff received a hearing before Administrative Law Judge Denise A. Copeland ("ALJ") on August 6,

---

[1] The ALJ's decision states that the current application for SSI was made on November 22, 2013. (Tr. 10). However, Plaintiff's application for SSI is dated December 4, 2013. (Tr. 271).

1

2015. (Tr. 45-88). On September 25, 2015, the ALJ determined that Plaintiff was not under a disability. (Tr. 135-49). Plaintiff requested review, and the Appeals Council remanded the case for the ALJ to consider additional evidence. (Tr. 150-53). On remand, a hearing was held on October 11, 2017. (Tr. 7-32, 89-121). The ALJ again found that Plaintiff was not disabled on May 3, 2018. (*Id*.). The Appeals Council denied Plaintiff's request for review of the ALJ's decision on November 13, 2018. (Tr. 1-6). That decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

## II. Facts

Plaintiff was twenty years old when he filed his SSI application, and twenty-four years old at the date of the ALJ's 2018 decision. (Tr. 7, 271). School records show that Plaintiff entered 10th grade, but withdrew from school in 2011. (Tr. 334). Although Plaintiff contends he was placed in special education classes, no evidence of such a placement exists in the record. (Tr. 22, 305-326, 351-52). Plaintiff has no past relevant work. (Tr. 117, 333). Plaintiff was found disabled as a child, and he received supplemental social security income. (Tr. 10). After Plaintiff reached age 18, the Social Security Administration reviewed Plaintiff's disability and found that Plaintiff was not disabled under the criteria applicable to adult disability. (*Id*.).

In January 2012, and while assessing Plaintiff's age-18 redetermination, the Disability Determination Service ("DDS") sent Plaintiff to Dr. Jerry Gragg, Psy.D. for a psychological evaluation. (Tr. 411). Plaintiff's mother accompanied him to the appointment, and stated that a previous doctor had diagnosed Plaintiff as "mentally retarded," but she could not provide any evidence in support of that. (Tr. 411). Plaintiff reportedly watches cartoons, plays board games, maintains a normal sleep pattern, and prepares simple meals. (Tr. 412). Dr. Gragg performed a mental status exam, but was unable to gauge Plaintiff's abstract reasoning skills, judgment, or

concentration because Plaintiff avoided interacting with him, and failed to answer questions. (Tr. 412). Dr. Gragg attempted to administer the Wechsler Adult Intelligence Scale test (WAIS-IV), but Plaintiff was uncooperative. (*Id.*). Dr. Gragg reported that Plaintiff's lack of cooperation stemmed from severe social anxiety, but he could not offer any further diagnostic impression. (Tr. 412). State agency psychological consultant Dr. Robert Estock subsequently reviewed the claim file, and reported that there was "no way to ascertain [Plaintiff's] ability to function" due to Plaintiff's lack of cooperation. (Tr. 534-47).

Dr. Scott Boswell treated Plaintiff from March 2013 to September 2017. (Tr. 414-80). On March 14, 2013, Plaintiff complained to Dr. Boswell of strep pharyngitis, gastric discomfort, and anxiousness. (Tr. 449, 465-67). Plaintiff also completed paperwork for Dr. Boswell, which indicated that he was involved in a monogamous sexual relationship and had become involved in mixed-martial arts. (Tr. 453-54). Dr. Boswell reported that Plaintiff demonstrated normal speech, intact memory, and appropriate intellectual functioning. (*Id.*). Dr. Bowell prescribed Lexapro for anxiety, as well as Ultram and a Medrol Dose pack for pain and discomfort related to the pharyngitis. (Tr. 455). Records show Plaintiff filled the prescriptions the following day. (Tr. 373).

During a follow up visit in April 2013, Plaintiff reported some improvement on Lexapro, but still awoke with panic attacks. (Tr. 446). Dr. Boswell prescribed a beta blocker for bedtime and increased the dose of Lexapro. (*Id.*). On June 11, 2013, Plaintiff reported he did not want to take any medication that changed the way he felt. (Tr. 437).

In August 2013, Dr. Boswell treated Plaintiff for pain in his ribs and tailbone, which Plaintiff claimed to have received from a mixed-martial arts fight. (Tr. 422). Dr. Boswell reported that Plaintiff's sacrum was tender to palpation, but the x-rays were negative. (Tr. 421-22). Dr.

3

Boswell prescribed Morbic for pain, along with Toprol and Lexapro. (Tr. 422-23, 438-39, 447). Dr. Boswell ultimately referred Plaintiff to Eastern Interventional Pain Center due to Plaintiff's continued complaints of pain. (Tr. 421). Throughout his treatment with Dr. Boswell, Plaintiff repeatedly reported he worked, participated in mixed-martial arts, and was married with a child. (Tr. 422, 438).

On September 19, 2013, Dr. Boswell ordered an MRI scan of Plaintiff's lumbar spine. (Tr. 420). The scan showed minor facet hypertrophy at L3-4 without significant stenosis. (*Id*.). At L4-5, the scan showed facet hypertrophy, with mild ligamentum flavum infolding, and a posterior disc bulge with posterior annular fissures and minor bilateral foraminal narrowing. (*Id*.). At L5-S1, there was minor facet hypertrophy and posterior broad-based disc bulge with posterior annular fissures and moderate foraminal stenosis. (*Id*.).

On November 8, 2013, Plaintiff began treatment at Eastern Interventional Pain Center, after complaining of low back pain due to an injury sustained during a cage fighting match. (Tr. 499-500, 582). Plaintiff stated that he had previously been prescribed oxycodone and methadone for his pain, as well as Percocet to manage pain for nose and rib fractures from 2010. (Tr. 492, 582). Urine drug screens performed by Dr. Boswell in April, June, and August 2013 were negative for oxycodone, methadone, and other controlled substances or drugs of abuse. (Tr. 424, 428, 440). Oddly, Plaintiff's records from January 2014 indicate he had been on oxycodone and methadone for the last two years. (Tr. 492). Dr. Franco at Eastern Pain diagnosed Plaintiff with chronic opioid drug usage, osteoarthritis, and musculoskeletal pain. (Tr. 491).

On January 30, 2014, Plaintiff reported to Dr. Charles Houston for another psychological consultative examination, which was arranged by the DDS. (Tr. 483-84). Dr. Houston attempted to assess Plaintiff's intellectual functioning by administration of the WAIS-IV, but reported that

4

attempt was unsuccessful because Plaintiff was uncooperative. (Tr. 484). Plaintiff's mother reported that Plaintiff's behavior was "childlike;" and that Plaintiff did not do household chores, drive, or visit others, but instead spent most of the time playing with toy cars and soldiers. (Tr. 482-83). Dr. Houston offered a diagnosis of social anxiety disorder, with a rule-out diagnosis of social phobia and probable depressive disorder. (Tr. 483-84).

In March 2014, state agency psychological consultant Angela Register, Ph.D., reported that Plaintiff's medical record was "fraught with inconsistencies." (Tr. 128). She declined to give any weight to the opinions of Dr. Houston or Dr. Gragg, given Plaintiff's refusal to cooperate with them. (Tr. 125-28).

Dr. Thomas Shafer treated Plaintiff from March 2014 to July 2015. (Tr. 510-33). On March 6, 2014, Plaintiff initially presented to Dr. Shafer, seeking psychiatric treatment for depression and anxiety. (Tr. 533). Plaintiff also reported he was experiencing pain in his back and ribs that prevented him from sleeping. (*Id.*). Plaintiff reported he was working in construction part-time. (Tr. 532-33, 587). Dr. Shafter wrote Plaintiff prescriptions for oxycodone, methadone, Soma, Prozac, and Trazadone. (Tr. 510-33). Pharmacy records indicate that Plaintiff only filled the prescription for oxycodone - from May 2014 to July 2015. (Tr. 373).

In January 2016, Alan Blotcky, Ph.D., evaluated Plaintiff at the request of Plaintiff's attorney. (Tr. 549-53). According to Dr. Blotcky, Plaintiff did not present with psychotic symptoms. (Tr. 549). Plaintiff reported on several activities of daily living. For example, Plaintiff spent most of his time watching television, needed help with bathing and dressing, could not cook, performed no chores other than cleaning his room, did not have a driver's license, and could not use a cell phone. (*Id.*). Plaintiff reported that he had no friends, never had a girlfriend, liked structure and routines, and became agitated when his routines were disrupted. (*Id.*). Plaintiff told

5

Dr. Blotcky that he was prescribed Prozac for depression, social anxiety, and chronic pain, but it had no impact. (*Id.*). Plaintiff was appropriately attired, and did not seem depressed or anxious; rather, Plaintiff appeared "primitive, distant, aloof, and in his own world." (Tr. 550). Dr. Blotcky reported that Plaintiff's communication and social skills were poor, noting that his speech was sparse and slow. (*Id.*). Dr. Blotcky opined that Plaintiff's judgment was "impoverished" and his insight "nil." (*Id.*).

Dr. Blotcky administered and completed the WAIS-IV testing. (Tr. 550-51). Plaintiff obtained a Verbal Comprehension Index of 58, a Perceptual Reasoning Index of 56, a Working Memory Index of 58, a Processing Speed Index of 59, and a Full Scale IQ of 51. (*Id.*). Dr. Blotcky indicated the Plaintiff's scores fell in the lower end of the mildly retarded range of intellectual abilities. (*Id.*). Dr. Blotcky diagnosed Plaintiff with autism spectrum disorder and mild mental retardation. (*Id.*).

Plaintiff was next seen by Dr. Robert Nicke at Eastern Interventional Pain in September 2017. (Tr. 556). Dr. Nicke repeatedly documented concerns about narcotics use, noting: Plaintiff "does not have the objective findings to support his prior ridiculous level of narcotic consumption," "[h]is eye contact and movement are furtive and this is not [consistent with] the type of behavior I want displayed from opioid pain management patients," "[h]e has been informed that his current MRI findings do not justify his current narcotic usage and that these are medications he cannot expect to be on for the rest of his life." (Tr. 557, 566, 569, 572, 577). Dr. Nick further opined that that fact that the "whole nuclear family is on this type of therapy, all with minimal to no objective findings, is very concerning." (Tr. 557).

**III. ALJ Hearing**

After an earlier remand from the Appeals Council, the ALJ held a hearing in Birmingham, Alabama on October 11, 2017. (Tr. 10, 89-121). At the beginning of the hearing, the ALJ noted that Plaintiff had not arrived. (Tr. 90). The ALJ also noted that Plaintiff had called earlier to say he was almost there, but that had been "more than half an hour ago." (*Id*.). As a result, the ALJ determined she would send a Notice to Show Cause to Plaintiff, stating that the hearing would be rescheduled or a supplemental hearing would be held if Plaintiff could provide good cause for his absence. (*Id*.). Plaintiff finally arrived and the ALJ attempted to go forward. But, Plaintiff refused to cooperate and would not be placed under oath. (Tr. 92). Plaintiff's attorney stated, "It's just not a good day." (Tr. 94). The ALJ said, "Well, I'm not going to reschedule it though, you know? I'll be happy to take some testimony from his mother." (Tr. 94).

During the hearing, Plaintiff began answering questions, but he could not confirm that he understood the difference between telling the truth and telling a lie. (Tr. 95). The ALJ then stated, "[w]e're not going to go forward." (*Id*.). Plaintiff's mother, Brenda Martinez, then testified. (Tr. 96-113). Plaintiff's mother noted, "My memory is horrible." (Tr. 96). When asked by the ALJ about Plaintiff's education, Plaintiff's mother could not provide any evidence of Plaintiff's placement in a special education program. (Tr. 97-100). When asked what grade Plaintiff was in when he left school, Plaintiff's mother answered that "[i]t might have been the 8th or 9th." (Tr. 101). Plaintiff's mother mentioned Plaintiff went to the doctor about once a month, but could not recall exactly. (Tr. 102) ("My memory—I forget everything, baby"). The ALJ asked why Plaintiff could not work. Plaintiff's mother replied, "I wished I knew names of things and could explain it to you better, hun. But I'm not all there myself." (Tr. 103). In regard to Plaintiff's family, Plaintiff's mother noted that two of her children were blind and had another child who was "worse

7

than [Plaintiff]." (Tr. 112). She stated Plaintiff did not do well around strangers, had vomited when they had trouble finding the hearing location, and had a history of exaggerating things, such as Plaintiff's idea that "he's going to make millions of dollars." (Tr. 108, 111). Plaintiff's mother reported that Plaintiff loved wrestling and his dog. (Tr. 107, 111). At the end of the hearing, the ALJ said she would hold the record open for 12 days to allow the attorney to submit certain additional medical records from the Eastern Interventional Clinic, and the claimant's pharmacy records. (Tr. 120).

## IV. ALJ Decision

The Social Security Administration has established a five-part sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. § 404.1520(a). First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 4041520(a)(4)(i). Substantial gainful activity ("SGA") is defined as work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 C.F.R. 404.1520(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id*. Third, the ALJ must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. § 404, Subpart Π, Appendix 1. *See* 20 C.F.R.

8

§§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite the claimant's impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id*. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the final part of the analysis, the ALJ must determine whether the claimant is able to do any other work considering his residual functional capacity age, education, and work experience. 20 C.F.R § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given the residual functional capacity, age, education, and work experience. 20 C.F.R. § 1512(f). 404.1560(c).

The ALJ followed the established five-step sequential evaluation process for determining whether Plaintiff was disabled. (Tr. 11-28). First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 22, 2013, the application date. (Tr. 13). Second, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease, obesity, and mental disorder(s). (Tr. 13-15). Third, the ALJ concluded that Plaintiff does not have an impairment and/or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 15-21). In reaching this

9

conclusion, the ALJ considered the severity of Plaintiff's mental impairments, both "singly and in combination," as well as whether "paragraph B" and "paragraph C" criteria were satisfied. The ALJ found that the record did not support a finding that Plaintiff satisfied the criteria. (*Id.*).

Fourth, the ALJ found that Plaintiff has the residual functional capacity to perform the light work as defined in 20 CFR 404.157(b). (Tr. 22). The ALJ set forth the following work specifications: (1) Plaintiff can understand, remember, and carry out simple work instructions, but not those that are more detailed and more complex, (2) Plaintiff can adjust to occasional workplace changes, (3) Plaintiff can never perform work requiring interaction with the general public, but can occasionally interact with coworkers and supervisors, and (4) Plaintiff is capable of sustained attention and concentration sufficient to perform work at this level for at least two hours during an 8-hour workday. (*Id.*). In making these findings, the ALJ considered all symptoms and the extent to which those symptoms could reasonably be accepted as consistent with objective medical evidence and other evidence. (Tr. 22). Finally, the ALJ considered the testimony of a vocational expert and found that other work existed in significant numbers in the national economy that Plaintiff could perform based on his age, education, past work experience, and RFC. (Tr. 27-28). Because Plaintiff retained the ability to perform the work requirements of representative occupations, such as a small parts assembler, electronics worker, and housekeeper, the ALJ found that Plaintiff was not disabled under Section 1614(a)(3)(A) of the Act. (*Id.*).

**V. Plaintiff's Argument for Remand or Reversal**

Plaintiff presents two arguments for review. He argues that (1) the ALJ's failure or refusal to reschedule the October 11, 2017 hearing to allow Plaintiff another opportunity to appear and testify constitutes a failure to afford Plaintiff a full and fair hearing, and (2) the ALJ's decision is

not supported by substantial evidence. (Pl.'s Br., Doc # 13, at 14, 19-20). The court addresses both arguments together because in this context, they substantially overlap.

## VI. Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence or whether the correct legal standards were applied. 42 U.S.C. §405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). The Commissioner's factual findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Martin*, 894 F.2d at 1529. Legal standards are reviewed *de novo*. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## VII. Discussion

For the reasons explained below, the court finds that the Commissioner based his decision on substantial evidence and correct legal standards were applied. The decision, accordingly, is due to be affirmed.

Plaintiff argues that the ALJ's failure or refusal to reschedule the October 2017 hearing to allow him another opportunity to appear constitutes a failure to afford him a full and fair hearing. (Pl.'s Br., Doc # 13, at 14). In support of this contention, Plaintiff relies, in part, on a Sixth Circuit

decision,[2] as well as two Northern District of Illinois decisions.[3] (Pl. Br., Doc # 13, at 14-15). The court is not persuaded.

A claimant is entitled to a full and fair hearing. *Miles v. Charter*, 84 F.3d 1397, 1400 (11th Cir. 1996). But, this legal principle does not live in the abstract. Even when a hearing before an ALJ is less than "totally satisfactory," remand is unwarranted unless the claimant can show prejudice. *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985); *see also Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997) (a showing of prejudice must be made before a court will find that a hearing violated a social security claimant's rights of due process to such a degree that the case must be remanded to the [Commissioner] for further development of the record.). The Eleventh Circuit has concluded that this required showing "at least" requires a demonstration that the ALJ did not have all of the relevant evidence before her in the record, or that the ALJ did not consider all of the evidence in the record in reaching her decision. *Kelley*, 761 F.2d at 1540. Moreover, a presumption exists that judicial and quasi-judicial officers such as ALJs are unbiased. *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 920 (11th Cir. 2019).

Here, although Plaintiff's hearing may not have been totally satisfactory, he was a main cause of that. But, the key point is this: Plaintiff has failed to demonstrate that the ALJ did not possess the relevant evidence before her in the record, or that the ALJ failed to properly consider the evidence in the record. *Kelley*, 761 F.2d at 1540. The ALJ considered the following: Plaintiff's "educational history, documentation regarding the claimant's prior receipt of supplemental

---

[2] *See Stoner v. Secretary of Health and Human Servs.,* 837 F.2d 759 (6th Cir.1988). Notably, the Eleventh Circuit has negatively referenced the *Stoner* decision in *Sherrod v. Chater*, 74 F.3d 243, 246 n.4 (11th Cir. 1996). In *Sherrod*, the court noted Plaintiff's misplaced reliance on *Stoner*, as the *Stoner* court's decision that Plaintiff's due process rights were violated turned on the fact that the claimant was unable to be at the hearing due to medical complications. *Id*. The *Sherrod* plaintiff, like the current Plaintiff, were present and represented by counsel at the hearing. Accordingly, this court also finds Plaintiff's reliance on *Stoner* misplaced.

[3] *Binzen v. Barnhart*, No. 01 C 2716, 2002 WL 31324061, at *7 (N.D. Ill. Oct. 16, 2002); *see also White v. Barnhart*, 235 F. Supp. 2d 820, 827 (N.D. Ill. 2002).

security income, the three psychological evaluations [], the claimant's treatment records, and various statements made by the claimant and/or his mother." (Tr. 16). The ALJ also considered Plaintiff's failed attempts to complete IQ testing, along with the successfully completed IQ testing performed by Dr. Blotcky, and pharmacy printouts from Gross Drug Company, showing that Plaintiff did not fill all of his prescriptions. (Tr. 17, 20). Treatment records included reports from Dr. Boswell, which showed Plaintiff was able to complete new patient paperwork (Tr. 17), records from Dr. Shafer and Dr. Gragg, which were "absent a showing of intellectual deficits," but containing "reports of consistent work activity," (Tr. 21), as well as opinions rendered by Dr. Blotcky, Dr. Houston, Dr. Nicke and Dr. Gragg as to Plaintiff's mental functioning. (Tr. 19, 25).

In considering the breadth of medical and non-medical evidence, the ALJ noted that the evidence contained "ongoing contradictions and inconsistencies" that "raise[d] significant questions as to the veracity of allegations." (Tr 23). When assessing Plaintiff's education records, the ALJ noted the lack of evidence of an individualized education plan, reports of intelligence testing, or special education class records. (Tr. 14, 22). The ALJ also considered Plaintiff's mother's statements that Plaintiff received child disability benefits based on attention deficit disorder, although there was "no [other] evidence to support this allegation." (Tr. 14). The ALJ noted that Plaintiff's mother's statements submitted in the third-party function report "differ[ed] significantly" from statements she made to Dr. Blotcky regarding Plaintiff's activities of daily living. (Tr. 17, 19). Moreover, the ALJ contrasted Plaintiff's testimony at his first 2015 hearing, where he testified "without difficulty" (Tr 18), with his behavior at the second hearing, even though "no such behavior ha[d] ever been identified by any of [Plaintiff's] treating physicians." (Tr. 18) (an affidavit submitted by Plaintiff's mother after the 2015 hearing); (Tr. 27-28) (testimony of the vocational expert). The court notes that the ALJ carefully considered the entire

record and it further concludes that substantial evidence supports the ALJ's decision. (Tr. 13). Ultimately, the ALJ concluded, based that the evidence of record did not contain "any diagnostic findings, signs, symptoms, or laboratory results" to support a finding of disability (Tr. 15). As the ALJ stated, "the documentation simply does not support the degree of functional limitation allege." (Tr. 16).

Plaintiff has failed to make the required showing of prejudice. Plaintiff merely speculates that a third hearing would have provided him the opportunity to testify "without emotional distress." (Pl. Br. Doc. #13 at 18). *Schweiker*, 456 U.S. at 195-96; *accord Coley*, 771 F. App'x at 921 (a generalized speculation that Plaintiff was prejudiced is not enough to overcome the presumption that the ALJ was unbiased). Plaintiff has also failed to demonstrate how a third hearing would have changed the outcome, especially in light of the substantial evidence supporting the ALJ's decision, including the testimony Plaintiff's mother provided at the hearing on behalf of Plaintiff. *See Kelley*, 761 F.2d at 1540-41 (Plaintiff fails to show prejudice where Plaintiff fails to indicate what facts could have been submitted that would have changed the outcome).

Plaintiff appears to argue that the ALJ's comments during the hearing deprived him of a full and fair hearing. (Pl. Br. Doc #13, at 14-17). At most, the ALJ's comments indicate frustration with Plaintiff's uncooperativeness. *Liteky v. United States*, 510 U.S. 540, 556 (1994) (even where a judge is "stern and short-tempered," the judge's "ordinary efforts at courtroom administration" do not demonstrate inappropriate bias). Even if Plaintiff believes he received less than a "totally satisfactory" hearing, remand is unwarranted because Plaintiff has not shown prejudice. *Kelley*, 761 F.2d at 1540. The Commissioner's decision is supported by substantial evidence, and the correct legal standards were applied. *Wilson*, 284 F.3d at 1221.

**VIII.	Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence, and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be **AFFIRMED**. A separate order in accordance with this memorandum decision will be entered.

**DONE** and **ORDERED** this March 11, 2020.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE